UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MOLLYE P.,<br><br>               Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL, Commissioner<br>of Social Security,<br><br>              Defendant. | NO. 1:19-CV-3160-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 14, 15). The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

## JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

1  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

2  404.1520(b), 416.920(b).

3       If the claimant is not engaged in substantial gainful activities, the analysis

4  proceeds to step two.  At this step, the Commissioner considers the severity of the

5  claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

6  claimant suffers from "any impairment or combination of impairments which

7  significantly limits [his or her] physical or mental ability to do basic work

8  activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

9  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

10  however, the Commissioner must find that the claimant is not disabled.  *Id.*

11       At step three, the Commissioner compares the claimant's impairment to

12  several impairments recognized by the Commissioner to be so severe as to

13  preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§

14  404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

15  severe than one of the enumerated impairments, the Commissioner must find the

16  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

17       If the severity of the claimant's impairment does meet or exceed the severity

18  of the enumerated impairments, the Commissioner must pause to assess the

19  claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

20  defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 19, 2015, Plaintiff filed applications for Title II disability insurance benefits and Title XVI supplemental security income benefits, alleging an onset date of November 22, 2014. Tr. 330-42. The applications were denied initially, Tr. 202-25, and on reconsideration, Tr. 230-45. Plaintiff appeared at hearings before an administrative law judge ("ALJ") on November 9, 2017 and July 9, 2018. Tr. 81-128. On July 24, 2018, the ALJ denied Plaintiff's claim. Tr. 27-52.

As a threshold matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. Tr. 32. At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 22, 2014, the alleged onset date. Tr. 33. At step two, the ALJ found Plaintiff had the following severe impairments: cervical spine impairment, bilateral knee impairment, left shoulder

impairment, hip impairment, headaches, and irritable bowel syndrome. *Id.* At step

three, the ALJ found Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of a listed impairment. Tr.

36-37. The ALJ then found Plaintiff had the RFC to perform work with the

following limitations:

> [Plaintiff] has the residual functional capacity to lift and carry ten pounds
> frequently and twenty pounds occasionally. She can stand and/or walk (with
> normal breaks) for a total of two hours in an eight-hour workday. She can
> sit for a total of six hours in the same period. She can occasionally crouch,
> crawl, and climb ladders. She can frequently kneel, stoop, and climb ramps
> and stairs. She can occasionally reach overhead with her left arm. She
> should avoid concentrated exposure to pulmonary irritants. She will be off-
> task up to ten percent of an eight-hour workday. Her work tasks should not
> take her far from a restroom, such as for traveling to different job sites.

Tr. 37.

At step four, the ALJ found Plaintiff was capable of performing past relevant

work as a receptionist and as a proofreader. Tr. 43. Alternatively, at step five, the

ALJ found that, considering Plaintiff's age, education, work experience, RFC, and

testimony from a vocational expert, there were other jobs that existed in significant

numbers in the national economy that Plaintiff could perform, such as maintenance

dispatcher, civil service clerk, and clerical sorter. Tr. 44. The ALJ concluded

Plaintiff was not under a disability, as defined in the Social Security Act, from

November 22, 2014 through July 24, 2018, the date of the ALJ's decision. Tr. 45.

On June 3, 2019, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the Appeals Council erred in declining to exhibit medical evidence submitted after the ALJ's decision;

2. Whether the ALJ properly evaluated Plaintiff's impairments at step two;

3. Whether the ALJ properly weighed Plaintiff's symptom testimony; and

4. Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 14 at 2.

## DISCUSSION

### A. New Evidence Before the Appeals Council

Plaintiff contends the ALJ's decision is not supported by substantial evidence because the Appeals Council erroneously declined to exhibit medical evidence submitted after the ALJ's decision. ECF No. 14 at 4-5.

The Social Security regulations permit claimants to submit additional evidence to the Appeals Council. 20 C.F.R. §§ 404.900(b), 416.1400(b). The Appeals Council is required to consider "new" and "material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision" and "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5) and (b), 416.1470(a)(5) and (b). Evidence that meets the threshold criteria must be considered by the Appeals Council and incorporated into the administrative record as evidence, "which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Pursuant to agency policy, a copy of evidence *not* meeting the criteria and therefore not considered by the Appeals Council is nonetheless included as part of the certified administrative record filed with this Court, although by law, the evidence rejected falls outside the scope of the Court's substantial-evidence review. *See* Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), HALLEX § I-3-5-20, available at https://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html (addressing how additional evidence is to be handled when the Appeals Council denies a request for review and does not consider the evidence, stating a copy of the

evidence will be associated in the file and "included in the certified administrative record if the case is appealed to Federal court").

"'Consider' is a term of art in the context of the Appeals Council's denial of request for review." *Ruth v. Berryhill*, No. 1:16-CV-0872-PK, 2017 WL 4855400, at *9 (D. Or. Oct. 26, 2017). The Appeals Council will first "look at" newly submitted evidence to make a threshold determination of relevance, and if the new evidence meets that threshold, the Appeals Council will then "consider" the evidence and incorporate it into the administrative record. *Id.* Where the Appeals Council declines to consider the additional evidence, it is not made part of the evidence contained in the administrative record that is subject to this Court's substantial evidence review. *Brewes*, 682 F.3d at 1163; *see Ruth*, 2017 WL 4855400 at *8-*10 (citing other district court decisions in the Ninth Circuit holding that that new evidence that the Appeals Council looked at and then rejected did not become part of the administrative record subject to the Court's substantial evidence review).

In this case, Plaintiff submitted a medical opinion report and treatment notes from Dr. Jackson, Plaintiff's treating physician, to the Appeals Council. Tr. 12-24. The report and the treatment notes are both dated August 23, 2018, after the date of the ALJ's decision. *Id.* The Appeals Council reviewed this evidence but declined to exhibit it, concluding that this new evidence did not "show a reasonable

probability that it would change the outcome of the decision." Tr. 2. Because the Appeals Council looked at but did not consider Dr. Jackson's August 2018 opinion, it is not now subject to this Court's substantial evidence review. Plaintiff is not entitled to relief on these grounds.

**B. Step Two**

Plaintiff contends the ALJ failed to identify all of Plaintiff's severe impairments at step two. ECF No. 14 at 5-7. At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1521, 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work...." Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522, 416.922; SSR 85-28.

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff contends the ALJ should have identified Plaintiff's right arm pain and lumbar spine pain as severe impairments at step two. ECF No. 14 at 5-7. Even if the ALJ should have identified these impairments as severe, any error would be harmless because the step was resolved in Plaintiff's favor. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Plaintiff makes no showing that these conditions create limitations not already accounted for in the RFC. *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the

burden of showing harm).  Indeed, the ALJ's consideration of the medical

evidence discusses Plaintiff's pain allegations, including related hip and neck pain

symptoms, and includes extensive citation to Plaintiff's musculoskeletal

examinations and imaging.  Tr. 37-43.  Although Plaintiff cites to Dr. Jackson's

opinion to show that Plaintiff's right arm and lumbar spine impairments caused

functional limitations, the ALJ provided specific and legitimate reason to discredit

Dr. Jackson's opinion.  ECF No. 14 at 6-7; *see infra*.  The Court "may neither

reweigh the evidence nor substitute its judgment for that of the Commissioner."

*Blacktongue v. Berryhill*, 229 F. Supp. 3d 1216, 1218 (W.D. Wash. 2017) (citing

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)).  Plaintiff is not entitled to

relief on these grounds.

## C.  Plaintiff's Symptom Testimony

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to

discredit her symptom testimony.  ECF No. 14 at 15-21.

An ALJ engages in a two-step analysis to determine whether to discount a

claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL

1119029, at *2.  "First, the ALJ must determine whether there is 'objective

medical evidence of an underlying impairment which could reasonably be

expected to produce the pain or other symptoms alleged.'"  *Molina*, 674 F.3d at

1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The

claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that

precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. Tr. 38.

### 1. *Lack of Supporting Medical Evidence*

The ALJ found Plaintiff's symptom complaints were not supported by the objective medical evidence. Tr. 38-40. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ found that Plaintiff's physical examination and imaging results were inconsistent with her allegations of disabling knee pain. Tr. 39-40; *see* Tr. 464-65 (October 29, 2014: Plaintiff presented with normal gait, full weight bearing ability, no assistive devices, mild swelling in left knee, mild crepitation in right knee, and "excellent range of motion of left knee" despite significant pain complaints); Tr. 595-96 (April 15, 2015: physical examination showed normal gait and strength in knees and 140 degrees of flexion in knees); Tr. 557 (May 5, 2015: musculoskeletal examination showed no deformities, full functional range of motion, normal gait, station, and balance, and no atrophy); Tr. 791-92 (November 3, 2016: physical examination following knee surgery showed full active pain-free range of motion and Plaintiff ambulated well without an assistive device); Tr. 803 (February 18, 2017: physical examination of lower extremities showed normal range of motion); Tr. 779 (May 24, 2017: Plaintiff displayed normal gait, full strength in lower extremities, and at least 130 degrees of flexion in both knees); Tr. 1370 (September 21, 2017: physical examination showed active, pain-free range of motion in both knees). The ALJ also found that Plaintiff's allegations of disabling

hip pain were not supported by the objective evidence.  Tr. 39-40; *see* Tr. 507

(January 5, 2015: imaging of Plaintiff's hip showed mild degenerative changes);

Tr. 502 (March 24, 2015: MRI showed labral tear of left hip); Tr. 557 (May 5,

2015: musculoskeletal examination showed no deformities, full functional range of

motion, normal gait, station, and balance, and no atrophy); Tr. 610-11 (October 26,

2015: Plaintiff underwent hip arthroscopy with limited labral debridement); Tr.

803 (February 18, 2017: physical examination of lower extremities showed normal

range of motion); Tr. 772 (July 20, 2017: Plaintiff reported bilateral hip pain but

exhibited negative FADIR test, mildly positive Faber test, negative straight leg

raise test, and normal gait); Tr. 1370 (September 21, 2017: physical examination

showed active, pain-free range of motion in both hips); Tr. 1525 (April 9, 2018:

MRI showed left hip chondral loss).  Additionally, the ALJ noted that Plaintiff's

allegations of disabling IBS were inconsistent with her record of minimal weight

fluctuation, benign abdominal examinations, and no record of treatment for severe

abdominal pain, poorly controlled diarrhea, or considerable weight loss.  Tr. 40;

*see* Tr. 557 (May 5, 2015: Plaintiff denied weight loss); Tr. 1120 (February 5,

2016: Plaintiff reported some abdominal pain and diarrhea but did not receive

treatment for gastrointestinal issues); Tr. 1122 (February 29, 2016: abdominal

examination showed tenderness on left lower quadrant only; Plaintiff encouraged

to seek treatment for IBS); Tr. 1462 (April 28, 2016: abdominal examination

normal); Tr. 905 (May 14, 2016: same); Tr. 1425 (September 7, 2016: same); Tr. 818 (November 2, 2016: same); Tr. 802-03 (February 18, 2017: same); Tr. 805 (July 18, 2017: same); Tr. 1108 (October 2, 2017: same, no abdominal tenderness); Tr. 1122 (December 19, 2017: same). The ALJ reasonably concluded that this evidence was inconsistent with the degree of impairment Plaintiff alleged.

Plaintiff challenges the ALJ's findings by identifying evidence in the record that supports Plaintiff's symptom allegations, including evidence of painful range of motion, use of a walker and cane following surgery, periods of notable weight loss, and reports of abdominal pain. ECF No. 14 at 16-18. However, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158. Here, despite the evidence Plaintiff identifies, the ALJ's conclusion that Plaintiff's symptom allegations were not supported by the objective medical evidence remains supported by substantial evidence.

### 2. *Improvement with Treatment*

The ALJ found Plaintiff's symptom allegations were inconsistent with her record of improvement with treatment. Tr. 39-40. The effectiveness of treatment

is a relevant factor in determining the severity of a claimant's symptoms. 20

C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*,

439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively

controlled with medication are not disabling for purposes of determining eligibility

for benefits); *Tommasetti*, 533 F.3d at 1040 (recognizing that a favorable response

to treatment can undermine a claimant's complaints of debilitating pain or other

severe limitations). Here, the ALJ noted that, following knee surgery, Plaintiff

reported doing "excellent," that she had no more pain in her left knee, and that she

had full range of motion in her knee for the first time in fifteen years. Tr. 40; *see*

Tr. 791. The ALJ reasonably concluded that this evidence was inconsistent with

Plaintiff's testimony that her knee pain increased after surgery. Tr. 40; *see* Tr.

108-09. The ALJ also observed Plaintiff reported improvement in her pain

symptoms and daily functioning following cervical spine surgery. Tr. 39; *see* Tr.

1273 (October 11, 2017: Plaintiff reported resolution of finger numbness following

neck surgery, displayed full strength, and was observed to be doing well with

functional mobility and activities of daily living); Tr. 1190 (February 2, 2018:

Plaintiff reported pain relief from neck surgery helped improve her moods "quite a

lot"). The ALJ reasonably concluded that this evidence was inconsistent with

Plaintiff's symptom testimony that her neck pain persisted following surgery. Tr.

39; *see* Tr. 106-07.

Plaintiff challenges the ALJ's conclusion by arguing for a different interpretation of this evidence, but this does not provide grounds to reverse the ALJ's findings. ECF No. 14 at 16-17; *see Tommasetti*, 533 F.3d at 1038. The ALJ's finding remains supported by substantial evidence.

### 3. Drug-Seeking Behavior

The ALJ found Plaintiff's subjective symptom reporting was undermined by evidence of drug-seeking behavior throughout the record. Tr. 39-41. Drug-seeking behavior can be a clear and convincing reason to discount a claimant's credibility. *Edlund*, 253 F.3d at 1157-58 (holding that evidence that the claimant exaggerated physical pain complaints to receive prescription narcotics provided clear and convincing reason to discredit the claimant's subjective allegations). Here, the ALJ found that Plaintiff's "complaints of headache appear to be a means of obtaining prescription opiates." Tr. 39. The ALJ noted that Plaintiff presented at an August 25, 2017 medical appointment reporting headaches, back pain, and neck stiffness, but displayed a full range of motion and normal muscle strength and tone in her head, neck, and back. Tr. 39; *see* Tr. 970. The ALJ then observed that on the following day, Plaintiff presented to the emergency room complaining of uncontrolled headaches and neck pain due to a motor vehicle accident two weeks prior and displayed painful range of motion in the neck. Tr. 39; *see* Tr. 989. However, the ALJ observed that objective imaging of Plaintiff's spine taken during

her emergency room visit did not show any changes from her January 2017 imaging. Tr. 39; *see* Tr. 990-92. Additionally, during this visit, Plaintiff was given Tylenol for pain and instructed to limit her narcotic use, but Plaintiff refused the Tylenol and instead requested narcotic pain medications, which were given despite Plaintiff's admission that another provider had recently discontinued her narcotic prescription. *Id.* The ALJ reasonably concluded that this evidence indicated Plaintiff exaggerated her symptoms to obtain narcotics. Tr. 39.

The ALJ also noted several instances in which Plaintiff sought excessive quantities of narcotic pain medications or abused her medications. Tr. 40-41; *see* Tr. 469-71 (September 3, 2014: Plaintiff established care with a new provider and sought refill of Gabapentin; the provider then discovered Plaintiff filled the same prescription for 100 tablets approximately 3 weeks earlier and admonished Plaintiff to manage her refill quantity); Tr. 1113 (August 27, 2015: Plaintiff was cautioned about violating her pain agreement for accepting hydrocodone prescriptions from her dentist; Plaintiff was also noted to have received excessive codeine cough syrup prescriptions since March 2015); Tr. 1146 (October 5, 2016: PA Urakawa informed Plaintiff he would no longer prescribe both benzodiazepines and opioids and Plaintiff would have to choose which medication to continue); Tr. 764 (November 9, 2016: Plaintiff established care with Dr. Jackson and was prescribed hydrocodone in addition to an existing benzodiazepine prescription); Tr.

713 (November 11, 2016: Plaintiff reported marijuana use and recreational narcotics use); Tr. 1205 (August 25, 2017: Plaintiff reported stealing her boyfriend's pain medication); Tr. 1210 (December 5, 2017: Plaintiff reported having an arrangement at home where her boyfriend would lock up her pain medications and dispense them to her as needed); Tr. 1082 (December 19, 2017: Plaintiff went to the emergency room with chest pain and was given Percocet and clonidine before treating providers realized Plaintiff's primary care provider had already prescribed and was tapering down oxycodone); Tr. 1291 (December 19, 2017: Plaintiff's chest pain diagnosed as opiate withdrawal and atypical chest pain). Plaintiff challenges the ALJ's conclusion by arguing for a different interpretation of this evidence, but this does not provide grounds to reverse the ALJ's findings. ECF No. 14 at 18-20; *see Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). The ALJ reasonably concluded that this evidence demonstrated drug-seeking behavior. This finding remains supported by substantial evidence.

### 4. *Inconsistent Statements*

The ALJ found Plaintiff's subjective symptom reporting was undermined by evidence of inconsistent statements in the record. Tr. 41-42. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an

individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen*, 80 F.3d at 1284 (the ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms and other testimony that "appears less than candid"). Conflicting or inconsistent statements about drug use are appropriate grounds for the ALJ to discount a claimant's reported symptoms. *Thomas*, 278 F.3d at 959.

Here, the ALJ noted that Plaintiff inconsistently reported her marijuana use to different providers. Tr. 41; *see* Tr. 664 (Plaintiff reported marijuana use as early as December 2013); Tr. 469 (September 3, 2014: Plaintiff established care with PA Urakawa and reported discontinuing marijuana use 30 years ago); Tr. 456 (October 17, 2014: Plaintiff endorsed current marijuana use); Tr. 537 (November 3, 2014: Plaintiff reported using marijuana at least three to five times weekly to Lourdes Counseling Center); Tr. 541 (December 10, 2014: Plaintiff reported daily marijuana use to Lourdes); Tr. 479 (December 16, 2014: PA Urakawa learned of Plaintiff's marijuana use from Plaintiff's Lourdes treatment notes). The ALJ reasonably concluded that Plaintiff inconsistently reported her marijuana use.

The ALJ also found inconsistency where Plaintiff testified that she discontinued her master's degree program due to neck pain, but other evidence in the record indicated Plaintiff reported she had pursued her master's degree until

she discovered there were no practicum sites in her area.  Tr. 42; *compare* Tr. 107 *with* Tr. 139.  Additionally, the ALJ noted that despite testifying at the hearing that Plaintiff's pain symptoms caused significant limitations in concentration, Plaintiff reported elsewhere that she had no problems paying attention.  Tr. 42; *compare* Tr. 109 *with* Tr. 397 *and* Tr. 416.  Plaintiff challenges the ALJ's conclusion by arguing for a different interpretation of this evidence, but this does not provide grounds to reverse the ALJ's findings.  ECF No. 14 at 19-21; *see Tommasetti*, 533 F.3d at 1038.  The ALJ's finding remains supported by substantial evidence.

### 5. *Failure to Follow Treatment Recommendations*

The ALJ found Plaintiff's subjective symptom reporting was undermined by her record of not following her treatment providers' recommendations.  Tr. 41.  "A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citations omitted).  Failure to assert a reason for not following treatment "can cast doubt on the sincerity of the claimant's pain testimony." *Id.*  Here, the ALJ noted that Plaintiff refused to discontinue using narcotic pain medication despite Dr. Sloop, Plaintiff's treating neurologist, informing Plaintiff that her headaches were likely caused by her hydrocodone use.  Tr. 41; *see* Tr. 625-26 (January 4, 2016: Dr. Sloop found Plaintiff's headaches were caused by rebound from daily hydrocodone use;

Plaintiff refused to discontinue hydrocodone and Dr. Sloop was unwilling to prescribe other medications until Plaintiff discontinued hydrocodone); Tr. 620 (July 7, 2016: Dr. Sloop again unwilling to treat Plaintiff's headaches due to Plaintiff's refusal to discontinue narcotics use). Additionally, the ALJ noted that Plaintiff continued to use marijuana despite being counseled to stop marijuana use while on chronic opiate therapy. Tr. 41; *see* Tr. 756 (December 1, 2016: Plaintiff counseled that she should not use marijuana while on chronic narcotic therapy); Tr. 1091 (November 3, 2017: same); Tr. 1067 (November 3, 2017: urine drug screen positive for marijuana, oxycodone, and benzodiazepines); Tr. 1064-65 (April 16, 2018: urine drug screen positive for marijuana and oxycodone). The ALJ reasonably concluded that Plaintiff's failure to follow treatment recommendations and instructions undermined her subjective symptom complaints.

Plaintiff contends that she did not follow Dr. Sloop's recommendation to discontinue hydrocodone because her medical providers disagreed about a course of treatment. ECF No. 14 at 18-19 (citing SSR 18-3p, 2018 WL 4945641, at *5). Specifically, Plaintiff notes that PA Urakawa continued to prescribe hydrocodone following Dr. Sloop's recommendation that Plaintiff stop using hydrocodone. *Id.*; *see, e.g.,* Tr. 1122. Even if this finding is error, it is harmless because the ALJ's other finding regarding Plaintiff's combined use of marijuana and narcotics against medical advice remains supported by substantial evidence. *Molina*, 674 F.3d at

1115 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination") (quotation and citation omitted). Plaintiff is not entitled to relief on these grounds.

    6. *Daily Activities*

The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ noted that Plaintiff's travel activities were inconsistent with the specific limitations she alleged. Tr. 42; *compare* Tr. 107, 120 (Plaintiff reported being able to sit for no more than 30 minutes at a time and being able to do housework for about 15 minutes before needing 30 minutes of rest) *with* Tr. 476-77 (Plaintiff took an approximately five-week trip to Texas in late 2014); Tr. 548 (Plaintiff took a vacation to Mexico in early 2015); Tr. 1168 (Plaintiff reported

being able to drive herself from Yakima to the Tri-Cities and Coos Bay, Oregon without problems); Tr. 1115 (Plaintiff took a week-long trip to Texas in late 2015); Tr. 1119-20 (Plaintiff took a second vacation to Mexico in early 2016). The ALJ reasonably concluded that these activities were inconsistent with the specific sitting and rest limitations Plaintiff alleged. Plaintiff challenges the ALJ's conclusion by arguing for a different interpretation of this evidence, but this does not provide grounds to reverse the ALJ's findings. ECF No. 14 at 21; *see Tommasetti*, 533 F.3d at 1038. This finding is supported by substantial evidence.

### D. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Caryn Jackson, M.D.; Howard Platter, M.D.; Alnoor Virji, M.D.; Trula Thompson, M.D.; and J. Dalton, M.D. ECF No. 14 at 7-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the

Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Jackson

Dr. Jackson, Plaintiff's treating physician, opined on May 30, 2017 that due to pain in multiple joints, including knees, hips, and neck, Plaintiff was unable to meet the demands of sedentary work. Tr. 976-78. On September 7, 2017, Dr.

Jackson similarly opined Plaintiff was not capable of performing any type of work on a reasonably continuous, sustained basis. Tr. 1054. The ALJ gave these opinions minimal weight. Tr. 43. Because Dr. Jackson's opinion was contradicted by Dr. Platter, Tr. 156-57, and Dr. Virji, Tr. 181-83, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Jackson's opinion.[1] *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Jackson's opinion was inconsistent with her own treatment notes. Tr. 43. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion

---

[1]    Plaintiff asserts that because Dr. Jackson's opinion was contradicted by agency reviewing physicians, whose opinions were rendered prior to some of the medical evidence of record, the ALJ should have provided clear and convincing reasons to discredit Dr. Jackson's opinion. ECF No. 14 at 8-9 (citing *Beecher v. Heckler*, 756 F.2d 693, 695 (9th Cir. 1985)). Plaintiff's argument misconstrues *Beecher* and is inconsistent with more recent case law. *See, e.g., Ford v. Saul*, --- F.3d ---, 2020 WL 829864, at *7 (9th Cir. Feb. 20, 2020) (applying the "specific and legitimate" standard to a treating physician's opinion contradicted by agency reviewing physicians' opinions).

with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn v. Astrue*, 495

F.3d 625, 631 (9th Cir. 2007). Moreover, a physician's opinion may be rejected if

it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340

F.3d 871, 875 (9th Cir. 2003). In support of her opinion, Dr. Jackson completed a

range of motion evaluation chart showing Plaintiff had reduced range of motion.

Tr. 979. However, the ALJ found that these results were inconsistent with Dr.

Jackson's longitudinal treatment notes, which documented normal physical

examination findings. Tr. 43; *see* Tr. 771 (November 9, 2016: normal physical

examination including normal neck examination); Tr. 762 (December 1, 2016:

normal physical examination with nonspecific swelling to right lateral aspect of

neck); Tr. 755 (March 14, 2017: normal physical examination including normal

neck examination); Tr. 897 (May 30, 2017: same); Tr. 876 (June 27, 2017: same).

The ALJ reasonably concluded that Dr. Jackson's opinion was inconsistent with

the longitudinal findings in her own treatment notes. This finding is supported by

substantial evidence.

Second, the ALJ found Dr. Jackson's opinion was inconsistent with other

physical examination evidence in the record. Tr. 43. An ALJ may discredit

physicians' opinions that are unsupported by the record as a whole. *Batson v.*

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). As discussed

*supra*, the ALJ noted that the record as a whole contains substantial evidence of

normal physical examination results, including normal range of motion findings. *See* Tr. 464-65 (October 29, 2014: Plaintiff reported ongoing knee pain but presented with normal gait, full weight bearing ability, no assistive devices, mild swelling in left knee, mild crepitation in right knee, and "excellent range of motion of left knee" despite significant pain complaints); Tr. 595-96 (April 15, 2015: physical examination showed normal gait and strength in knees and 140 degrees of flexion in knees); Tr. 557 (May 5, 2015: musculoskeletal examination showed no deformities, full functional range of motion, normal gait, station, and balance, and no atrophy); Tr. 791-92 (November 3, 2016: physical examination following knee surgery showed full active pain-free range of motion and Plaintiff ambulated well without an assistive device); Tr. 803 (February 18, 2017: physical examination of lower extremities showed normal range of motion); Tr. 779 (May 24, 2017: Plaintiff displayed normal gait, full strength in lower extremities, and at least 130 degrees of flexion in both knees); Tr. 1370 (September 21, 2017: physical examination showed active, pain-free range of motion in both knees); *see also* Tr. 557 (May 5, 2015: musculoskeletal examination showed no deformities, full functional range of motion, normal gait, station, and balance, and no atrophy); Tr. 803 (February 18, 2017: physical examination of lower extremities showed normal range of motion); Tr. 772 (July 20, 2017: Plaintiff reported bilateral hip pain but exhibited negative FADIR test, mildly positive Faber test, negative straight leg

raise test, and normal gait); Tr. 1370 (September 21, 2017: physical examination

showed active, pain-free range of motion in both hips).  The ALJ reasonably

concluded that this evidence was inconsistent with the limitations Dr. Jackson

opined.  This finding is supported by substantial evidence.

Third, the ALJ found Dr. Jackson's opinion was formed in reliance on

Plaintiff's subjective symptom reporting.  Tr. 43.  A medical opinion may be

rejected by the ALJ if it was inadequately supported by medical findings and based

too heavily on the claimant's properly discounted complaints.  *Bray*, 554 F.3d at

1228; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Edlund*,

253 F.3d at 1157 (the ALJ may properly discount a medical opinion that is

rendered without knowledge of scope of claimant's drug-seeking behavior).

However, when an opinion is not more heavily based on a patient's self-reports

than on clinical observations, there is no evidentiary basis for rejecting the opinion.

*Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-

1200 (9th Cir. 2008).

Here, in light of the lack of physical examination findings to support the

level of limitation Dr. Jackson opined, the ALJ reasonably considered Dr.

Jackson's reliance on Plaintiff's self-reporting.  As discussed *supra*, the ALJ found

that Plaintiff's symptom reporting was entitled to less weight because of evidence

of Plaintiff's drug-seeking behavior, including during Plaintiff's treatment with Dr.

Jackson.  Because of this finding, the ALJ reasonably concluded that Dr. Jackson's

opinion was entitled to less weight for being based on Plaintiff's self-reports.  This

finding is supported by substantial evidence.

Plaintiff challenges the ALJ's findings regarding Dr. Jackson's opinion by

offering other evidence in the record supportive of Dr. Jackson's opinion and

generally arguing for a different interpretation of the evidence.  ECF No. 14 at 9-

13.  However, the Court may not reverse the ALJ's decision based on Plaintiff's

disagreement with the ALJ's interpretation of the record.  *See Tommasetti*, 533

F.3d at 1038.  The Court "may neither reweigh the evidence nor substitute its

judgment for that of the Commissioner." *Blacktongue*, 229 F. Supp. 3d at 1218

(citing *Thomas*, 278 F.3d at 954).  Because the ALJ's interpretation of the evidence

was rational and supported by substantial evidence, the Court will not reverse the

ALJ's decision.

2.  *Dr. Dalton*

Dr. Dalton reviewed a May 26, 2015 medical report from Orthopedics

Northwest, PLLC, on June 8, 2015, and opined Plaintiff was capable of sedentary

work with additional unspecified marked limitations in postural restrictions and

gross or fine motor skills.  Tr. 559-62.  The ALJ gave this opinion some weight.

Tr. 42.  Because Dr. Dalton's opinion was contradicted by Dr. Platter, Tr. 156-57,

and Dr. Virji, Tr. 181-83, the ALJ was required to provide specific and legitimate

reasons for rejecting Dr. Dalton's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Dalton's opinion was entitled to less weight because it was not sufficiently explained. Tr. 42. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 at 1228. Furthermore, an ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999). Here, the ALJ noted that Dr. Dalton opined that Plaintiff had postural and motor skill restrictions, but Dr. Dalton did not identify specifically what those limitations were. Tr. 42; *see* Tr. 561. The ALJ reasonably concluded that Dr. Dalton's opinion was insufficiently explained. This finding is supported by substantial evidence.

Second, the ALJ found that Dr. Dalton's opinion was not supported by the single treatment note he reviewed. Tr. 42. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228. Here, the ALJ noted that Dr. Dalton's opinion was based on a review of a single 2015 treatment note, which the ALJ characterized as documenting no complaints or findings regarding

use of Plaintiff's upper extremities.[2]  Tr. 42.  However, the treatment note does document complaints and findings upon examination of trigger finger in Plaintiff's left thumb and right ring finger.  Tr. 606.  The ALJ's reasoning that this treatment note provided no support for manipulative limitations is not supported by substantial evidence.  However, any such error is harmless because the ALJ provided several other specific and legitimate reasons to discredit Dr. Dalton's opinion.  *Molina*, 674 F.3d at 1115 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination") (quotation and citation omitted).

Third, the ALJ found Dr. Dalton's opinion was entitled to less weight because it was inconsistent with the longitudinal medical evidence.  Tr. 42.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  As discussed *supra*, the ALJ noted that the record as a whole contains substantial evidence of normal physical examination results, including normal range of motion.  *See* Tr. 464-65 (October 29, 2014:

---

[2]      Plaintiff asserts, without citation to evidence, that Dr. Dalton's review of the evidence also included the Quality Care records reviewed by Dr. Thompson.  ECF No. 14 at 14-15.  To the contrary, Dr. Dalton's report indicates only that he reviewed the single Orthopedics Northwest treatment note.  Tr. 559.

Plaintiff reported ongoing knee pain but presented with normal gait, full weight

bearing ability, no assistive devices, mild swelling in left knee, mild crepitation in

right knee, and "excellent range of motion of left knee" despite significant pain

complaints); Tr. 595-96 (April 15, 2015: physical examination showed normal gait

and strength in knees and 140 degrees of flexion in knees); Tr. 557 (May 5, 2015:

musculoskeletal examination showed no deformities, full functional range of

motion, normal gait, station, and balance, and no atrophy); Tr. 791-92 (November

3, 2016: physical examination following knee surgery showed full active pain-free

range of motion and Plaintiff ambulated well without an assistive device); Tr. 803

(February 18, 2017: physical examination of lower extremities showed normal

range of motion); Tr. 779 (May 24, 2017: Plaintiff displayed normal gait, full

strength in lower extremities, and at least 130 degrees of flexion in both knees); Tr.

1370 (September 21, 2017: physical examination showed active, pain-free range of

motion in both knees); *see also* Tr. 557 (May 5, 2015: musculoskeletal

examination showed no deformities, full functional range of motion, normal gait,

station, and balance, and no atrophy); Tr. 803 (February 18, 2017: physical

examination of lower extremities showed normal range of motion); Tr. 772 (July

20, 2017: Plaintiff reported bilateral hip pain but exhibited negative FADIR test,

mildly positive Faber test, negative straight leg raise test, and normal gait); Tr.

1370 (September 21, 2017: physical examination showed active, pain-free range of

motion in both hips).  The ALJ reasonably concluded that this evidence was inconsistent with the limitations Dr. Dalton opined.  This finding is supported by substantial evidence.

Fourth, the ALJ found Dr. Dalton's opinion was entitled to less weight because it was inconsistent with Plaintiff's activities.  Tr. 42.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d at 601-02.  Here, the ALJ noted that Plaintiff reported gardening and drawing without being "bothered much" by her hands, and that Plaintiff reported her daily activities to include household chores, cooking, lawn care and gardening, and shopping.  Tr. 42; *see* Tr. 393, 412, 550.  The ALJ reasonably concluded that these activities were inconsistent with the marked general manipulative limitations Dr. Dalton opined.  This finding is supported by substantial evidence.

### 3.  Dr. Thompson, Dr. Platter, and Dr. Virji

Dr. Thompson reviewed the record of medical reports from Quality Care Medical Clinic on March 24, 2015 and opined that Plaintiff was capable of performing work at the light exertional level, "possibly with some positional restrictions."  Tr. 1109-10.  The ALJ gave this opinion some weight.  Tr. 42.

Dr. Platter reviewed the record on May 11, 2015, and opined Plaintiff could lift 20 pounds occasionally and lift 10 pounds frequently; that Plaintiff could stand

for a total of 2 hours and sit for about 6 hours in an 8-hour workday; that Plaintiff

could frequently climb ramps/stairs, stoop, and kneel; that Plaintiff could

occasionally climb ladders/ropes/scaffolds, crouch, and crawl; and that Plaintiff

was limited in reach overhead on the left side and was limited to occasional

reaching with the left upper extremity.  Tr. 155-57.  Dr. Virji reviewed the record

on August 18, 2015, and rendered the same opinion on functional limitations as Dr.

Platter.  Tr. 181-83.  The ALJ gave these opinions significant weight.  Tr. 43.

Plaintiff challenges the ALJ's consideration of all three opinions, arguing

that the ALJ gave too much weight to these opinions.  ECF No. 14 at 13-14.

Plaintiff argues that, for various reasons, the ALJ should have given less weight to

these opinions in favor of the opinion of Dr. Jackson.  *Id.*  Plaintiff's argument

essentially invites this Court to reweigh the challenged medical opinions.  The

Court "may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner."  *Blacktongue*, 229 F. Supp. 3d at 1218 (citing *Thomas*, 278 F.3d at

954).  Although Plaintiff proposes different findings of fact that the ALJ should

have made, and then encourages this Court to adopt the same, this Court is a

reviewing court and is not a finder of fact.  *Fair*, 885 F.2d at 604.

Moreover, the opinion of a nonexamining physician may serve as

substantial evidence in support of an ALJ's nondisability determination if the

opinion is "supported by other evidence in the record and [is] consistent with it."

*Andrews*, 53 F.3d at 1041. The ALJ gave some weight to Dr. Thompson's opinion, and significant weight to Dr. Platter's and Dr. Virji's opinions, because the ALJ found these opinions to be somewhat or significantly supported by the medical evidence, including the objective medical evidence and evidence of Plaintiff's activities. Tr. 42-43. The ALJ reasonably concluded that the opinions of these three non-examining doctors, but primarily Dr. Platter and Dr. Virji, were consistent with the evidence discussed throughout this Order. Tr. 42-43. The ALJ's evaluation of these nonexamining physician opinions is supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (**ECF No. 14**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**ECF No. 15**) is **GRANTED**.

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to counsel, and **close the file**.

**DATED** March 2, 2020.



THOMAS O. RICE
Chief United States District Judge